IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| FIRST UNITED METHODIST CHURCH, and TOKIO MARINE SPECIALTY INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> vs. <br><br> XAVIER BECERRA, Secretary of the United States Department of Health & Human Services; UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES; and CENTERS FOR MEDICARE AND MEDICAID SERVICES, <br><br> Defendants. | **8:22CV175** <br><br> **MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT** |

Plaintiffs First United Methodist Church (First United) and Tokio Marine Specialty Insurance Company (Tokio Marine) have filed suit against Defendants Xavier Becerra in his capacity as the Secretary of the United States Department of Health & Human Services (DHHS), the DHHS, and the Centers for Medicare and Medicaid Services (CMS). Filing 1 at 1. Plaintiffs seek a Declaratory Judgment to remedy the way that their Medicare dispute was administratively resolved. Plaintiffs claim that they submitted a timely request to "reopen" an unfavorable initial determination that was made by a contractor with Medicare's Commercial Repayment Center (CRC). However, because the CRC analyzed Plaintiffs' dispute through the rubric of a "redetermination" request, Plaintiffs contend their request for a "reopening" was never acted upon at all.  This matter is now before the Court on Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, based on lack of subject matter jurisdiction. Filing 20.

The Court observes that in handling the matters involved in this litigation, the relevant agencies of the United States Government did not have their best day. Indeed, the Court

1

understands the frustration of Plaintiffs given the seemingly inexplicable actions of various agencies of the government that bring this matter before the Court. However, when handling disbursement of government funds, those seeking the funds must follow appropriate rules and regulations in order to be reimbursed. If Plaintiffs had fully followed applicable regulations and met all deadlines when seeking reimbursement, this Court would likely be in a position to help them. Under the circumstances presented here, however, the Court grants Defendants' motion because the Court lacks subject matter jurisdiction.

## I.   BACKGROUND

### A.  Factual Background

On April 6, 2014, Phyllis D. Johnsrud was involved in an accident on the premises of First United in Norfolk, Nebraska. Filing 1 at 3; Filing 24 at 2; Filing 28 at 2. At the time, First United was covered by a commercial liability insurance policy through Tokio Marine. Filing 24 at 2; Filing 28 at 2. Plaintiffs made a $14,999.89 payment pursuant to this policy for the benefit of Johnsrud's medical care within a week of the accident. Filing 1 at 3; Filing 24 at 2; Filing 28 at 2. However, on July 1, 2020, the CRC sent Plaintiffs a letter demanding $25,509.16. Filing 1 at 3; Filing 24 at 3; Filing 28 at 3. The CRC claimed that Tokio Marine was the primary payer and, therefore, was responsible for conditional payments that Medicare had previously made in connection with Johnsrud's accident at First United on April 6, 2014. Filing 1 at 3; Filing 28 at 2. A little over six months later, on January 8, 2021, Plaintiffs sent a letter to the CRC asking that they cancel a lien that had been instituted against Tokio Marine. Filing 24 at 3; Filing 28 at 2. The CRC categorized this letter as a request for a "redetermination." Filing 24 at 3; Filing 28 at 2. Thereafter, on March 22, 2021, Tokio Marine paid $26,916.07 to CMS. Filing 1 at 3; Filing 24 at 4; Filing 28 at 3. This sum reflected "the amount alleged to be owed pursuant the Medicare Second

Payer Provisions of the Social Security Act" and, according to Plaintiffs, was paid "solely for the purpose [of] avoid[ing] further interest from accruing." Filing 1 at 3.[1]

A few weeks later, on April 1, 2021, Plaintiffs requested "that the CRC reopen its initial determination for clerical error, good cause, and 'many reasons'" pursuant to 42 C.F.R. § 405.980(c).[2] Filing 24 at 4; Filing 28 at 2; Filing 1 at 3. The CRC issued a redetermination decision on May 19, 2021, and it dismissed Plaintiffs' request for an appeal of the initial determination. Filing 1 at 3; Filing 24 at 4; Filing 28 at 2. According to the CRC, Plaintiffs' request for redetermination was not received within 120 days of the initial determination; therefore, the request was untimely, and Plaintiffs failed to establish good cause for the delay. Filing 1 at 3; Filing 24 at 3; Filing 28 at 2. Plaintiffs responded on June 24, 2021, by requesting reconsideration of this decision by a Qualified Independent Contractor (QIC).[3] Filing 1 at 3; Filing 24 at 4; Filing 28 at 2. In their letter requesting reconsideration, Plaintiffs stated,

---

[1] The $26,916.07 payment included the original $25,509.16 amount that the CRC originally claimed was due in the demand letter it sent on July 1, 2020, plus an additional $1,406.91 in interest. Filing 24 at 4; Filing 28 at 2.

[2] This regulation provides:

    (1) A party may request that a contractor reopen its initial determination or redetermination within 1 year from the date of the initial determination or redetermination for any reason.

    (2) A party may request that a contractor reopen its initial determination or redetermination within 4 years from the date of the initial determination or redetermination for good cause in accordance with § 405.986.

    (3) A party may request that a contractor reopen its initial determination at any time if the initial determination is unfavorable, in whole or in part, to the party thereto, but only for the purpose of correcting a clerical error on which that determination was based. Third party payer error does not constitute clerical error. See § 405.986(c).

    (4) A party may request that a contractor reopen an initial determination for the purpose of reporting and returning an overpayment under § 401.305 of this chapter.

42 C.F.R. § 405.980(c)(1)–(4).

[3] A QIC is an "entity which contracts with the Secretary in accordance with section 1869 of the Act to perform reconsiderations under § 405.960 through § 405.978." 42 C.F.R. § 405.902. "A person or entity that is a party to a redetermination made by a contractor as described under § 405.940 through § 405.958, and is dissatisfied with that

The above facts and attached evidence demonstrate BCRC's actions are arbitrary, capricious and contrary to its own governing regulations. This and other reasons above demonstrate good and sufficient cause for CRC to vacate its dismissal of the reopen request. This is because we did not file an appeal of the initial determination. Medicare's decision is nonsensical and does not apply the appropriate factors in deciding whether a revised initial determination is warranted. Medicare is also wrongfully applying inappropriate timeframe [sic] to the request to reopen.

Filing 22 at 216.

On August 20, 2021, the QIC affirmed the CRC's decision to dismiss Plaintiffs' request for redetermination. Filing 1 at 4; Filing 24 at 4; Filing 28 at 2. The QIC further advised that the dismissal was final, not subject to further review, and that Plaintiffs had no further appellate rights in this case. Filing 28 at 3; Filing 31 at 4. Nevertheless, Plaintiffs proceeded to request a hearing before an Administrative Law Judge (ALJ). Filing 1 at 4; Filing 24 at 4; Filing 28 at 3. On February 22, 2022, the ALJ dismissed Plaintiffs' request without a hearing. Filing 1 at 4; Filing 24 at 4; Filing 28 at 3. There is no evidence in the administrative record—nor any contention by the parties—that Plaintiffs asked the ALJ to vacate his decision. *See generally* Filing 22; Filing 24; Filing 28; Filing 31. Thereafter, Plaintiffs filed suit in this Court on May 10, 2022. Filing 1 at 8.

## B.  Plaintiffs' Complaint

Plaintiffs have asserted two specific "claims for relief" in their Complaint. Filing 1 at 5–7. The first claim alleges a "Violation of the Administrative Procedures Act, 5 U.S.C. § 706." Filing 1 at 5. In this claim, Plaintiffs argue that "Defendants' determinations herein are final agency actions that are arbitrary, capricious, an abuse of discretion, and not in accordance with law." Filing 1 at 5. The second claim in their Complaint alleges that they are entitled to relief under the "Declaratory Judgment Act[,] 28 U.S.C. § 2201." Filing 1 at 6. In this claim, Plaintiffs contend

determination, may request a reconsideration by a QIC in accordance with § 405.962 through § 405.966, regardless of the amount in controversy." 42 C.F.R. § 405.960

that they "do not have a legal obligation to reimburse Medicare for its alleged conditional payments under the express language of the" Medicare Secondary Payer Statute. Filing 1 at 6. They "request that the Court render a declaratory judgment, reversing Defendants' decision" and that this "Court order Defendants to reimburse Plaintiffs in the amount of \$26,916.07[.]" Filing 1 at 6. In the alternative, Plaintiffs ask "the Court to reverse the Defendants' decision and remand the cause for a hearing and/or further administrative review." Filing 1 at 7.

### C.  Procedural Posture

As noted above, this matter comes before the Court on Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. Filing 20. Defendants filed their Opening Brief on August 10, 2022. Filing 24. In it, they argue that the Court lacks subject matter jurisdiction over the claims alleged in Plaintiffs' Complaint and, therefore, they seek dismissal of the Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Filing 24 at 16. They alternatively move for summary judgment in their favor pursuant to Rule 56 to the extent this Court were to determine that consideration of the administrative record would convert their motion to one for summary judgment. *See* Filing 24 at 11. Plaintiffs submitted an opposition brief on September 30, 2022. Filing 28. Defendants then filed a reply on October 20, 2022. Filing 31.

## II.  LEGAL ANALYSIS

### A.  Rule 12(b)(1) Standards

The Eighth Circuit Court of Appeals has explained that on a Rule 12(b)(1) motion,

The plaintiff bears "the burden of proving the existence of subject matter jurisdiction," and we may look at materials "outside the pleadings" in conducting our review. [*Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013) (en banc)] (quoting *Green Acres Enters., Inc. v. United States*, 418 F.3d 852, 856 (8th Cir. 2005)). Because of the "unique nature of the jurisdictional question," *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990) (citation omitted), it is the court's duty to "decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue," *id.* at 730. As such, if the court's inquiry extends beyond the pleadings, it is not necessary to apply Rule 56 summary

judgment standards. *Id.* at 729. Rather, the court may receive evidence via "any rational mode of inquiry," and the parties may "request an evidentiary hearing." *Id.* at 730 (quoting *Crawford v. United States*, 796 F.2d 924, 928 (7th Cir. 1986)). Ultimately, the court must rule upon "the jurisdictional issue [unless it] is 'so bound up with the merits that a full trial on the merits may be necessary to resolve the issue.'" *Id.* (quoting *Crawford*, 796 F.2d at 928).

*Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019); *Am. Fam. Mut. Ins. Co. v. Vein Centers for Excellence, Inc.*, 912 F.3d 1076, 1081 (8th Cir. 2019) ("[A] motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) raises a factual challenge to the court's jurisdiction, and courts may look to evidence outside the pleadings and make factual findings." (citing *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018))).

The *Buckler* decision suggests that a challenge to subject matter jurisdiction pursuant to Rule 12(b)(1) is always "factual," but "facial" challenges are also possible:

> In deciding a motion under Rule 12(b)(1), the district court must distinguish between a facial attack—where it looks only to the face of the pleadings—and a factual attack—where it may consider matters outside the pleadings. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir.1990). In a factual attack, the "non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.* If the jurisdictional issue is "bound up" with the merits of the case, the district court may "decide whether to evaluate the evidence under the summary judgment standard." *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir.2018). This court is bound by the district court's characterization of the Rule 12(b)(1) motion. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir.2016) ("The method in which the district court resolves a Rule 12(b)(1) motion—that is, whether the district court treats the motion as a facial attack or a factual attack—obliges us to follow the same approach.").

*Croyle by & through Croyle v. United States*, 908 F.3d 377, 380–81 (8th Cir. 2018).

The Court will resolve Defendants' motion under Rule 12(b)(1) rather than Rule 56's summary judgment standard. Defendants have raised a "factual" attack on subject matter jurisdiction in this case given that it hinges upon materials contained outside the pleadings but included within the administrative record. *Croyle*, 908 F.3d at 380. Plaintiffs have not raised any objection to consideration of the administrative record on this motion; indeed, they extensively

6

rely upon it in their own brief. *See generally* Filing 28. Accordingly, there is no need to consider this matter under Rule 56. Because this Rule 12(b)(1) motion presents a factual attack on jurisdiction, the Court will consider not only the pleadings but also matters contained within the administrative record (*i.e.*, Filing 22). *Osborn, 918 F.2d at 729 n.6.*

### B.  Redeterminations, Reconsiderations, and Reopenings

The underlying dispute at the center of this case concerns distinctions between "redeterminations," "reconsiderations," and "reopenings"—three words that might sound similar but mean very different things within the Medicare regulatory context. "The Secretary may reopen or revise any initial determination or reconsidered determination . . . under guidelines established by the Secretary in regulations." 42 U.S.C. § 1395ff. "An initial determination . . . is binding upon all parties to the initial determination unless—(1) A redetermination is completed in accordance with § 405.940 through § 405.958; or (2) The initial determination is revised as a result of a reopening in accordance with § 405.980." 42 C.F.R. § 405.928(b). The Secretary has promulgated regulations applicable to "redeterminations," "reconsiderations," and "reopenings." *See* 42 C.F.R. §§ 405.940–405.958 (redeterminations); 42 C.F.R. §§ 405.960–405.978 (reconsiderations); 42 C.F.R. §§ 405.980–405.986 (reopenings). A brief examination of these three distinct regulatory procedures provides context to this case.

#### 1.  *Redeterminations*

After an "initial determination" has been made, a qualifying person or entity that is "dissatisfied with an initial determination may request a redetermination by a contractor in accordance with § 405.940 through § 405.958, regardless of the amount in controversy." 42 C.F.R. § 405.940. Unless the timeframe for filing a redetermination request has been extended, *see* 42 C.F.R. § 405.942(b), "any request for redetermination must be filed within 120 calendar days from the date a party receives the notice of the initial determination." 42 C.F.R. § 405.942(a). "[T]he

date of receipt of the initial determination will be presumed to be 5 calendar days after the date of the notice of initial determination, unless there is evidence to the contrary." 42 C.F.R. § 405.942(a)(1). Once a timely redetermination request is received and processed, "[u]pon the basis of the evidence of record, the contractor adjudicates the claim(s), and renders a redetermination affirming or reversing, in whole or in part, the initial determination in question." 42 C.F.R. § 405.954. "[O]nce a redetermination is issued, it becomes part of the initial determination." 42 C.F.R. § 405.958. "The redetermination is binding upon all parties unless—(a) A reconsideration is completed in accordance with § 405.960 through § 405.978; or (b) The redetermination is revised as a result of a reopening in accordance with § 405.980." 42 C.F.R. § 405.958(a)–(b).

2. *Reconsiderations*

If an applicable person or entity is dissatisfied with a redetermination, they "may request reconsideration by a QIC in accordance with § 405.962 through § 405.966, regardless of the amount in controversy." 42 C.F.R. § 405.960. Generally, "any request for a reconsideration must be filed within 180 calendar days from the date the party receives the notice of the redetermination," although there are some exceptions to this timeline. 42 C.F.R. § 405.962(a). As to the nature of a reconsideration,

> A reconsideration consists of an independent, on-the-record review of an initial determination, including the redetermination and all issues related to payment of the claim. In conducting a reconsideration, the QIC reviews the evidence and findings upon which the initial determination, including the redetermination, was based, and any additional evidence the parties submit or that the QIC obtains on its own. If the initial determination involves a finding on whether an item or service is reasonable and necessary for the diagnosis or treatment of illness or injury (under section 1862(a)(1)(A) of the Act), a QIC's reconsideration must involve consideration by a panel of physicians or other appropriate health care professionals, and be based on clinical experience, the patient's medical records, and medical, technical, and scientific evidence of record to the extent applicable.

42 C.F.R. § 405.968(a).

A reconsideration is binding on all parties, unless—

(a) An ALJ or attorney adjudicator decision is issued in accordance to a request for an ALJ hearing made in accordance with § 405.1014;

(b) A review entity issues a decision in accordance to a request for expedited access to judicial review under § 405.990; or

(c) The reconsideration is revised as a result of a reopening in accordance with § 405.980.

42 C.F.R. § 405.978.

3.   *Reopenings*

"A reopening is a remedial action taken to change a binding determination or decision that resulted in either an overpayment or underpayment, even though the binding determination or decision may have been correct at the time it was made based on the evidence of record." 42 C.F.R. § 405.980(a)(1). Unlike "redeterminations," "reopenings" are generally considered "separate and distinct from the appeals process." *Medicare Claims Processing Manual* (CMS Pub. No. 100-04), ch. 34, § 10; *see also* 42 C.F.R. § 405.980(a)(4) (explaining that "[w]hen a party has filed a valid request for an appeal of an initial determination, redetermination, reconsideration, ALJ or attorney adjudicator decision, or Council review no adjudicator has jurisdiction to reopen an issue on a claim that is under appeal until all rights for that issue are exhausted").

"A party may request that a contractor reopen its initial determination or redetermination within 1 year from the date of the initial determination or redetermination." 42 C.F.R. § 405.980(c)(1). However, a party may only make a reopening request outside of one year (and within four years) from the date of the initial determination or redetermination for good cause. 42 C.F.R. 405.980(c)(2).[4] A reopening "may be taken by—(i) a contractor to revise an initial

---

[4] A separate rule allows a party to make a reopening request of an initial determination "at any time" if the initial determination is unfavorable to the party thereto and the reopening request is "for the purpose of correcting a clerical error on which that determination was based." 42 C.F.R. § 405.980(c)(3).

determination or redetermination; (ii) a QIC to revise the reconsideration; (iii) an ALJ or attorney adjudicator to revise his or her decision; or (iv) the Council to revise the ALJ or attorney adjudicator decision, or its review decision." 42 C.F.R. § 405.980(a); *see also* 42 C.F.R. § 405.984 (establishing that a reopening can revise initial determinations, redeterminations, reconsiderations, ALJ or attorney adjudicator decisions, and Medicare Appeals Council decisions).

A "contractor's, QIC's, ALJ's or attorney adjudicator's or Council's decision on whether to reopen is binding and not subject to appeal." 42 C.F.R. § 405.980; *see also* 42 C.F.R. § 405.926(l) (the "determination or decision to reopen or not to reopen an initial determination, redetermination, reconsideration decision, or review decision" is not appealable).

### C. Analysis of the Administrative Record

The key reason why the distinctions between "redeterminations" and "reopenings" matter in this case is because a "redetermination" must be requested within 120 days of the initial determination, whereas a "reopening" can be requested "for any reason" within a year of the initial determination. *Compare* 42 C.F.R. § 405.942 ("redeterminations"), *with* 42 C.F.R. § 405.980(c)(1) ("reopenings"). Plaintiffs argue that when subsequent administrative review authorities (*i.e.*, a QIC and an ALJ) upheld the CRC's denial, their decisions were predicated upon application of inapposite standards attendant to "redetermination" requests—not "reopening" requests. Filing 28 at 6. A review of the administrative record helps explain how this process unraveled.

Plaintiffs and Defendants both agree that the CRC's demand letter on July 1, 2020, served as notice of an "initial determination" in this case.[5] *See* 42 C.F.R. 405.920–921. Therefore, to the

---

[5] When a Medicare contractor determines "[u]nder the Medicare Secondary Payer provisions of sections 1862(b) of the Act [*i.e.*, 42 U.S.C. § 1395y(b)(2)] that Medicare has a recovery claim if Medicare is pursuing directly from an applicable plan" this constitutes an "initial determination." 42 C.F.R. § 405.924(b)(16). Specifically, "there is an initial determination with respect to the amount and existence of the recovery claim." *Id.*; *see also Medicare Claims Processing Manual* (CMS Pub. No. 100-04) ch. 34, § 10 (noting that a Medicare Secondary Payer "recovery demand letter is an 'initial determination' as defined in 42 CFR 405.924").

extent that Plaintiffs wanted to seek a "redetermination" of this "initial determination," they had 120 days from the date they received the CRC's demand letter to file such a request. *See* 42 C.F.R. § 405.942. Plaintiffs do not claim that they ever sought a "redetermination" in this case. Indeed, they have repeatedly insisted that they never sought a "redetermination." *See* Filing 28 at 4, Filing 22 at 215–16. Plaintiffs have consistently maintained that they "did not appeal the initial determination and, instead, requested a re-opening." Filing 28 at 4. According to them, "they filed the request to re-open to avoid the exact predicament they now find themselves in, as they were fully aware of the 120-day period for redetermination requests." Filing 28 at 6. Thus, Plaintiffs are correct that the letter they submitted to the CRC on April 1, 2021, was timely submitted as a "reopening" request because it was within one year of the CRC's July 1, 2020, initial determination.

Why this seems to have caused so much confusion in the administrative record appears to stem from the fact that even though Plaintiffs claim they never sought a "redetermination" of the "initial determination," the CRC acted as though they did. Both parties presently agree that the CRC categorized Plaintiffs' January 8, 2021, letter as a request for "redetermination." Filing 24 at 3; Filing 28 at 2. The CRC's rationale in categorizing Plaintiffs' January 8th letter as a request for "redetermination" is not clear given that the deadline for requesting a redetermination had already passed. Moreover, the January 8th letter said nothing whatsoever about a "redetermination" or an "appeal" of the initial determination. *See generally* Filing 22 at 20. This very brief letter simply asked the CRC to cancel a lien that had been instituted against Tokio Marine. Filing 22 at 20.

The CRC's decision to analyze an untimely "redetermination" request that Plaintiffs never thought they made perhaps explains how the parties got to this point. Adding to the confusion, however, is that while Plaintiffs' inadvertent "redetermination" request was still pending with the

CRC, Plaintiffs requested that the CRC "reopen" its initial determination. Filing 22 at 146. Plaintiffs' April 1, 2021, "reopening" request made clear that they were not requesting a "redetermination"; they were requesting a "reopening." Filing 22 at 146. Because the CRC was still assessing Plaintiffs' case as though they had requested a "redetermination," at the time, when Plaintiffs submitted their "reopening" request on April 1, 2021, this effectively resulted in two different attacks on the "initial determination" being open at the same time—one untimely direct attack and one timely collateral attack. *See Medicare Claims Processing Manual* (CMS Pub. No. 100-04), ch. 34, § 10 (noting that "Reopenings are separate and distinct from the appeals process").

Matters became more confusing when the CRC sent Plaintiffs a letter on May 19, 2021, notifying them that their "request for *redetermination* was untimely and did not show good cause." Filing 22 at 86 (emphasis added). This letter was limited to the supposed "redetermination" request that the CRC thought Plaintiffs had made; it was not responsive to Plaintiffs' April 1, 2021, request for a "reopening." From there Plaintiffs requested reconsideration from both a QIC and an ALJ, but neither adjudicator agreed to grant Plaintiffs relief based upon the fact that they had submitted a "reopening" request rather than a request for "redetermination." Plaintiffs then proceeded to this Court.

### D. Plaintiffs Failed to Exhaust Their Administrative Remedies and Cannot Show that this Case Presents "Exceptional Circumstances" Sufficient to Waive this Requirement

Defendants contend that this Court lacks subject matter jurisdiction over the matter for the following three reasons. Filing 24 at 11. "First, the QIC's refusal to reopen is not subject to review" which necessarily deprives this Court of jurisdiction. Filing 24 at 11. "Second, even if Plaintiffs were entitled to judicial review, Plaintiffs have not exhausted their administrative remedies." Filing 24 at 11. Third, and finally, "Plaintiffs are not entitled to review under the Declaratory

Judgment Act (DJA) because the United States has not waived its sovereign immunity." Filing 24 at 11. The Court agrees with Defendants' second argument and resolves the matter on that basis.

### 1. *Plaintiffs Failed to Fully Exhaust Their Administrative Remedies*

#### a. The Parties' Arguments

Defendants contend that irrespective of whether the reopening decision is subject to judicial review at all, this Court still lacks subject matter jurisdiction because Plaintiffs did not "exhaust all administrative remedies under the Medicare Act before" bringing this case to federal court. *See* Filing 24 at 12 (citing 42 U.S.C. § 405(g)–(h)). Specifically, Defendants posit that "Plaintiffs could have requested that the ALJ vacate its dismissal and, if granted, have proceeded to [Medicare Appeals Council (MAC)] review." Filing 24 at 13; *see also* Filing 31 at 9. In support of this argument, Defendants point to the fact that on February 22, 2022, the Office of Medicare Hearings and Appeals (OMHA) sent a letter to Plaintiffs advising them that they had the "right to request the ALJ vacate its dismissal" but chose not to exercise that right. Filing 24 at 13. Therefore, "[b]ecause Plaintiffs had the right to request that the ALJ vacate its dismissal and failed to do so, Plaintiffs have not exhausted their administrative remedies." Filing 24 at 13.

Plaintiffs' answer is three-fold. They primarily assert that they "exhausted administrative review pursuant to [42 C.F.R.] § 405.904(a)(2)." Filing 28 at 6. In support of this argument, Plaintiffs note that the ALJ "expressly informed" them that the dismissal was not subject to further review by the MAC and that the dismissal was "final and not subject to any further review." Filing 28 at 6 (citing Filing 22 at 420–24). They also briefly raise two alternative arguments on this front. First, they posit that even if they "did not exhaust administrative remedies upon the filing of the Complaint, exhaustion has occurred during the pendency of this suit." Filing 28 at 7. Second, they contend that they have "exhausted administrative review because any purported decision to re-open or not to re-open is binding and not subject to administrative appeal." Filing 28 at 7.

13

### b. Applicable Standards

"The Medicare Act itself provides for district court review of the Secretary's benefit determinations." *Degnan v. Burwell*, 765 F.3d 805, 808 (8th Cir. 2014) (citing 42 U.S.C. § 1395ff(b)(1)(A)). Section 1395ff(b)(1)(A) of the Act states that, except where otherwise provided, "any individual dissatisfied with any initial determination under [42 U.S.C. §1395ff(a)(1)] shall be entitled to reconsideration of the determination and, subject to [the provisions of 42 U.S.C. §1395ff(b)(1)(D)–(E)], a hearing thereon by the Secretary to the same extent as provided in" 42 U.S.C. § 405(b) (*i.e.*, Social Security). The Medicare Act likewise incorporates the standards for judicial review that apply to Social Security determinations as codified in 42 U.S.C. § 405(g). *See* 42 U.S.C. § 1395ff(b)(1)(A); *Degnan*, 765 F.3d at 808 ("Section 1395ff(b)(1)(A) incorporates 42 U.S.C. § 405(g), which governs the district court's review of SSA decisions, and accordingly informs us here").

"In order for the district court to have subject matter jurisdiction under section 405(g), a claimant must have presented a claim for benefits to the Secretary and exhausted the administrative remedies prescribed by the Secretary." *Degnan*, 765 F.3d at 808.

> Modern-day claimants must generally proceed through a four-step process before they can obtain review from a federal court. First, the claimant must seek an initial determination as to his eligibility. Second, the claimant must seek reconsideration of the initial determination. Third, the claimant must request a hearing, which is conducted by an ALJ. Fourth, the claimant must seek review of the ALJ's decision by the Appeals Council. If a claimant has proceeded through all four steps on the merits, all agree, § 405(g) entitles him to judicial review in federal district court.

*Berryhill*, 139 S. Ct. at 1772.[6]

---

[6] The above-quoted language from the Supreme Court's decision in *Berryhill* was made in reference to Social Security claims rather than Medicare claims. However, this same four-step requirement generally applies to Medicare claims as well.

If a Medicare contractor determines a provider has been overpaid, the provider may challenge that decision through administrative and judicial review. The administrative review process has four

       c.   Analysis and Conclusion

            i.   Plaintiffs' Primary Argument Fails Because They Were Required to Request Vacatur In Order to Fully Exhaust Their Administrative Remedies Prior to Filing Suit

After the ALJ dismissed Plaintiffs' request for a hearing and upheld the QIC's decision, Plaintiffs filed suit in this Court; they did not request that the ALJ vacate his decision. *See* Filing 1 at 3–4. The only basis for Defendants' argument that Plaintiffs failed to exhaust their administrative remedies is that Plaintiffs did not request that the ALJ vacate his dismissal.[7] Filing 24 at 13. Plaintiffs' threshold argument is that there was no need to request vacatur as an administratively remedial prerequisite before resorting to federal court. Filing 28 at 6–7.

Pursuant to 42 C.F.R. § 405.1054, "[t]he dismissal of a request for review of a QIC dismissal of a request for reconsideration is binding and not subject to further review unless it is vacated by the ALJ or attorney adjudicator under § 405.1052(e)." When a party is notified that their request for review of a QIC dismissal has been denied, they are provided written notice that must include, *inter alia*, "[n]otification that the decision is binding and not subject to further review, unless reopened and revised by the ALJ or attorney adjudicator." 42 C.F.R. § 405.1046(b)(1)(iii). Likewise, the notice must also "state[] that there is a right to request that the ALJ . . . vacate the dismissal action." 42 C.F.R. § 405.1052(d). The February 22, 2022, letter from OMHA upon which Defendants rely correctly advised Plaintiffs in accordance with 42 C.F.R. §

---

        steps: (1) redetermination by the contractor; (2) reconsideration by a Qualified Independent Contractor; (3) a hearing before an Administrative Law Judge; and (4) review by the Appeals Council.

*Padda v. Becerra*, 37 F.4th 1376, 1380 (8th Cir. 2022) (internal citations omitted).

   [7] Defendants suggest that had the ALJ vacated its dismissal, Plaintiffs could then have availed themselves of the additional administrative remedy of seeking MAC review. Filing 24 at 13. Defendants recognize that Plaintiffs' ability to seek MAC review was contingent upon whether the ALJ vacated his dismissal; accordingly, Defendants do not independently fault Plaintiffs for failing to seek MAC review. Filing 24 at 13.

405.1052 because it informed them that they had "the right to request that the adjudicator who issued the dismissal vacate the dismissal by sending a letter explaining why [they] believe[d] the dismissal should be vacated . . . ." *See* Filing 22 at 440. Thus, the operative question before the Court is whether Plaintiffs were required to take the further step of asking the ALJ to vacate his dismissal to fully exhaust their administrative remedies before filing suit. For the following reasons, the Court finds that Plaintiffs were, indeed, required to do so.

At the outset, the Court notes that neither party cited any case law in support of their respective positions on this specific point. Instead both sides cite the applicable regulations which govern the immediate matter. *See* Filing 24 at 13 (Defendants citing 42 C.F.R. § 405.1048(b) and 42 C.F.R. § 1054(b)); Filing 28 at 7 (Plaintiffs citing 42 C.F.R. § 405.1052(d)–(e)). The Court's own review of legal authority has uncovered instructive case law that has convinced this Court of the appropriate resolution of this legal question.

In *Henry v. Azar*, 518 F. Supp. 3d 520, 534 (D.D.C. 2021), the United States District Court for the District of Columbia considered whether a plaintiff could rely upon the United States Supreme Court's decision in *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (2000), to assert jurisdiction over his Medicare claims pursuant to the federal question statute, 28 U.S.C. § 1331, rather than having to rely upon jurisdiction under the Medicare Act. *Henry*, 518 F. Supp. 3d at 529. The Court observed that generally "42 U.S.C. § 405(h), as incorporated into the Medicare Act by 42 U.S.C. § 1395ii, divests the district courts of federal question jurisdiction for all Medicare claims." *Henry*, 518 F. Supp. 3d at 529 (internal quotation marks omitted). Thus, claimants normally "must 'channel' their Medicare claims though the Medicare Act itself, seeking judicial review only as provided therein." *Id.* However, under the Supreme Court's decision in "*Illinois Council*, parties may invoke traditional federal question jurisdiction for Medicare claims,

'where [the] application of § 405(h) would not simply channel review through the agency, but would mean no review at all.'" *Id.* (quoting *Illinois Council*, 529 U.S. at 19).

In concluding that the *Illinois Council* exception did not apply to Henry's situation, the district court first began by articulating the procedures that Henry went through in seeking his remedy. *See Henry*, 518 F. Supp 3d at 532. The district court explained that Henry attempted to channel his payment determination claim through the administrative appeals process by receiving a determination from a Medicare contractor, requesting a redetermination from that same contractor, requesting reconsideration by a QIC, and then finally appealing the QIC's dismissal to an ALJ. *Id.* Much like the case before this Court, in *Henry* the QIC "dismissed the request for reconsideration on procedural grounds, concluding that . . . the contractor's payment determination . . . did not constitute an 'initial determination' subject to appeal." *Id.* The ALJ then proceeded to uphold the QIC's determination on the same basis. *Id.* The *Henry* court noted that at this point "an aggrieved beneficiary can generally appeal an adverse order from an ALJ to the Medicare Appeal Council, the final layer of agency review" and that if a beneficiary is unsuccessful at that stage "[t]he Medicare Act would then permit judicial review of that final decision from the Medicare Appeals Council." *Id.*

Just as Plaintiffs do here, Henry further "argue[d] that the ALJ's . . . dismissal order precluded him from reaching the Medicare Appeals Council" because "under 42 C.F.R. § 405.1054(b), an ALJ's dismissal of a request for review of a QIC dismissal of a request for reconsideration is binding and not subject to further review by the Medicare Appeals Council." *Henry*, 518 F. Supp. 3d at 532 (internal quotation marks omitted). Accordingly, Henry maintained that he had no other administrative recourse "and his only option to obtain further review of his claim was to bring an action before the federal district court under federal question jurisdiction."

*Id.* (internal quotation marks omitted). This is effectively the same argument that Plaintiffs make in the instant case. *See* Filing 28 at 6–7 (Plaintiffs arguing that they "were expressly not permitted to request the Council to review" in accordance with the ALJ's dismissal order) (emphasis omitted); *see also* Filing 1 at 1 (Plaintiffs' Complaint invoking jurisdiction pursuant to, *inter alia*, 28 U.S.C. § 1331).

Despite Henry's insistence that he had no further administrative recourse once the ALJ ordered dismissal, the district court explained, "[u]nder § 405.1054(b) of the Medicare regulations, such an order 'is binding and not subject to further review *unless it is vacated by the ALJ or attorney adjudicator under § 405.1052(e).'"* Henry, 518 F. Supp. 3d at 533 (emphasis in original). Like Plaintiffs in this case, Henry was notified "that he could request vacatur from the ALJ, and if 'good and sufficient cause is established, the adjudicator may vacate the dismissal.'" *Id*; *see also* Filing 22 at 440 (OMHA advising Plaintiffs in this case of the same). The district court noted there was nothing in the administrative record that showed "Mr. Henry ever requested vacatur of the . . . [ALJ's] dismissal order, even though the agency notified Mr. Henry that he could" request vacatur. *Henry*, 518 F. Supp. 3d at 534. Finding it "significant that Mr. Henry did not avail himself of the opportunity to vacate the ALJ's" decision, the court concluded that Henry could have continued to present his claim through the administrative process instead of resorting to federal question jurisdiction. *Id.* Therefore, his "failure to pursue this administrative channel place[d] his case even further outside the contours of the *Illinois Council* exception." *Id.* The district court then dismissed Henry's Medicare claims without prejudice for lack of subject matter jurisdiction. *Id.*

The Government has advanced the same basic argument that carried the day in *Henry*. They contend that "Plaintiffs could have requested that the ALJ vacate its dismissal and, if granted, have proceeded to [Medicare Appeals Council] review. Plaintiffs declined to avail themselves of this

administrative remedy." Filing 24 at 13. To be sure, the *Henry* decision focused upon the availability of federal question jurisdiction under the *Illinois Council* exception and 28 U.S.C. § 1331. However, its analysis of that issue necessarily implicates and informs the answer to the relevant question here, which is whether the Plaintiffs failed to exhaust their administrative remedies by not requesting vacatur of the ALJ's decision when they were specifically notified by OMHA that they could seek such relief.

Consistent with the *Henry* decision, the Court finds that Plaintiffs were required to request vacatur in order to fully exhaust their administrative remedies prior to invoking jurisdiction before this Court under the Medicare Act. Their "failure to pursue this administrative channel" placed their case "outside the contours of the *Illinois Council* exception" such that they may have been able to invoke federal question jurisdiction. *Henry*, 518 F. Supp. 3d at 534. Likewise, their "failure to pursue this administrative channel" also necessarily deprived the agency of "an opportunity to correct its own errors[.]" *Degnan*, 765 F.3d at 808 (quoting *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975) (explaining the purpose behind administrative exhaustion)).[8]

The Court recognizes, as Plaintiffs point out, that the February 22, 2022, letter from OMHA advised them that "[t]he dismissal of a request to review a lower level dismissal is not subject to further review by the Medicare Appeals Council" (Filing 22 at 421) and that the ALJ's Order of Dismissal said "[a] QIC's reconsideration of a contractor's dismissal of a redetermination request is final and not subject to any further review." Filing 22 at 422 (alteration in original) (quoting 42

---

[8] While there is an argument to be made that requesting vacatur would have been futile, that argument goes to whether there has been a waiver of the administrative exhaustion requirement, not whether there has been remedial exhaustion in the first place. *See Degnan*, 765 at 808 (explaining that "Courts may waive the exhaustion requirement" where the claims are (1) collateral to the underlying dispute, (2) irreparable injury will follow if exhaustion is required, and (3) that exhaustion would be futile). However, for now, the issue is whether Plaintiffs fully exhausted all their administrative remedies as required to invoke jurisdiction.

C.F.R. § 405.974(b)(3)); *see also* Filing 28 at 6. At the same time, the Court cannot ignore what the *Henry* court found to be of sufficient importance—"the agency notified [Plaintiffs] . . . that [they] could request vacatur from the ALJ, and if good and sufficient cause is established, the adjudicator may vacate the dismissal." *See Henry*, 518 F. Supp. 3d at 533 (internal quotation marks omitted). Accordingly, Plaintiffs' claim that they could seek no further administrative review once the ALJ issued his dismissal order is not correct because "[u]nder § 405.1054(b) of the Medicare regulations, such an order 'is binding and not subject to further review *unless it is vacated by the ALJ or attorney adjudicator under § 405.1052(e).*'" *Henry* 518 F. Supp. 3d at 533 (emphasis in original).

Many decisions by administrative adjudicators in the Medicare context are binding if left unchallenged. *See e.g.*, 42 C.F.R. § 405.928(a) (an initial determination is binding unless it is revised or reconsidered); 42 C.F.R. § 405.958 (a redetermination is binding unless a reconsideration is completed or the redetermination is revised as a result of a reopening); 42 C.F.R.§ 405.978 (a reconsideration is binding unless an ALJ or attorney adjudicator issues a decision, a review entity issues a decision, or the reconsideration is revised as a result of a reopening). A claimant is generally not free to forgo available administrative remedies and challenge their validity in federal court merely by invoking the otherwise "binding" nature of these determinations. Just like the regulations cited above, the pertinent regulation addressing the effect of an ALJ's "dismissal of a request for review of a QIC dismissal of a request for reconsideration" is likewise "binding" unless "the ALJ or attorney adjudicator vacates it pursuant to § 405.1052(e)." 42 C.F.R. § 405.1054(b). Accordingly, because 42 C.F.R.§ 405.1052(e) expressly provides for an administrative means of challenging such a dismissal, Plaintiffs failed to fully exhaust their administrative remedies when they declined to "avail [themselves] of the opportunity to vacate the

ALJ's" decision. *Henry*, 518 F. Supp. 3d at 534. For the foregoing reasons, the Court finds that Plaintiffs failed to exhaust their administrative remedies as required to invoke subject matter jurisdiction.

### ii.  Plaintiffs' Alternative Exhaustion Arguments Also Fail

Plaintiffs' two backup arguments as to why they exhausted their administrative remedies likewise fail. The Court will begin by dispensing with their one-sentence contention that "even if Plaintiffs did not exhaust administrative remedies upon the filing of the Complaint, exhaustion has occurred during the pendency of this suit." Filing 28 at 7. Plaintiffs are mistaken. Plaintiffs did not exhaust the vacatur requirement simply by allowing the timeline for requesting vacatur to expire while simultaneously pursuing suit in federal court. To the contrary, because vacatur was neither requested nor entered, the ALJ's dismissal became binding. *See* 42 C.F.R. § 405.1054(b). A party does not exhaust an administrative remedy by making no attempt to avail themselves of it and waiting until the deadline for seeking such a remedy has expired.

Plaintiffs' third and final argument on this specific matter is that they have "exhausted administrative review because any purported decision to re-open or not to re-open is binding and not subject to administrative appeal." Filing 28 at 7. Other federal courts have not been receptive to like arguments. *See e.g.*, *Palomar Med. Ctr. v. Sebelius*, 693 F.3d 1151, 1166 (9th Cir. 2012) (concluding that there was no jurisdiction over a challenge to a reopening decision because "[b]y barring any further review of reopening decisions, the regulations in effect foreclose not only administrative review, but also judicial review"); *cf. St. Francis Hosp. v. Sebelius*, 34 F. Supp. 3d 234, 252 (E.D.N.Y. 2014) (concluding that "because 42 C.F.R. §§ 405.926(l) and 405.980(a)(5) have been found valid, this Court is precluded from reviewing the Secretary's reopening of the Plaintiffs' claims to determine whether the Secretary complied with the regulations' good cause requirements").

Unlike the right to request a redetermination—which is conferred by statute—the right to request a reopening exists by regulation. *Compare* 42 U.S.C. § 1395ff(b)(1)(A) (stating that "any individual dissatisfied with any initial determination under subsection (a)(1) shall be entitled to reconsideration of the determination . . . ."), *with* 42 U.S.C. § 1395ff(b)(1)(G) ("The Secretary may reopen or revise any initial determination or reconsidered determination described above in this subsection under guidelines established by the Secretary in regulations"). Thus, like the regulatory scheme at issue in the Supreme Court's *Your Home* decision, the right to seek a reopening in the first place "exists only by the grace of the Secretary[.]" *See Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449, 454 (1999); *see also Berryhill*, 139 S. Ct. at 1777–78 (describing the Social Security Administration's "denial of a petition for reopening" as "a second look that the agency made available to claimants as a matter of grace"). Under "*Your Home* . . . [,] judicial review of a decision not to reopen is barred by section 405(h)." *St. Francis*, 34 F. Supp 3d at 240 (explaining that the Court's reasoning in *Your Home* "was based on the general notion that administrative review of an agency's discretionary act is ordinarily not subject to judicial review"). Accordingly, the Court declines to accept Plaintiffs' argument that they exhausted their administrative remedies when they decided to forgo their statutory right to seek a timely redetermination and instead resolved to rely exclusively on the reopening process.

2.   *Waiver of the Exhaustion Requirement is not Appropriate in this Case*

a.   The Parties' Arguments

Having concluded that Plaintiffs failed to exhaust their administrative remedies, the Court now turns to Plaintiffs' alternative argument. They contend that the exhaustion requirement was waived in this case because (1) further exhaustion would have been futile, (2) their claim was "collateral" to the underlying claim, and (3) they would suffer irreparable harm if required to

exhaust further administrative remedies. Filing 28 at 7. Defendants dispute that any one of these three factors has been shown in this case. *See* Filing 31 at 6–8.

      b. Applicable Standards

"Courts cannot waive the jurisdictional presentment requirement, but may, in exceptional circumstances, waive the exhaustion of administrative remedies requirement." *Degnan*, 765 F.3d at 808 (citing *Sipp v. Astrue*, 641 F.3d 975, 980 (8th Cir. 2011)). "[W]aiver of administrative remedies is the exception to the general rule." *Schoolcraft v. Sullivan*, 971 F.2d 81, 85 (8th Cir. 1992). "Courts may waive the exhaustion requirement if the claimants establish: '(1) their claims to the district court are collateral to their claim of benefits; (2) that irreparable injury will follow; and (3) that exhaustion will otherwise be futile.'" *Degnan*, 765 F.3d at 808 (quoting *Titus v. Sullivan*, 4 F.3d 590, 592 (8th Cir. 1993)). These three factors, first set forth by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976), have been referred to as the "*Eldridge* factors." *See Degnan*, 765 F.3d at 808 n.5.

The Supreme Court has said "[t]he ultimate decision of whether to waive exhaustion should not be made solely by mechanical application of the *Eldridge* factors, but should also be guided by the policies underlying the exhaustion requirement." *Bowen v. City of New York*, 476 U.S. 467, 484 (1986). However, the Eighth Circuit has interpreted *City of New York* to "require[] that claimants show (1) their claims are collateral to their claim of benefits; (2) that irreparable injury will follow; and (3) that exhaustion would otherwise be futile." *Schoolcraft*, 971 F.2d at 85; *see also Degnan*, 765 F.3d at 809 ("when our circuit utilizes the *Eldridge* factors, the court, in all but one case, has connected the factors with the word 'and,' rather than the word 'or,' indicating the conjunctive nature of the factors"). The Eighth Circuit has expressly disagreed with the proposition "that each of the *Eldridge* factors could be dispositive." *Degnan*, 765 F.3d at 809. Instead, it has adhered to its precedent that when a party has failed to establish one of the three *Eldridge* factors,

a court "need not consider the remaining two[.]" *Id.* (citing *Clarinda Home Health v. Shalala*, 100 F.3d 526, 531 (8th Cir. 1996)).

### c.   Analysis and Conclusion

#### i.   Plaintiffs Will Not Suffer Irreparable Harm

Plaintiffs insist, first, that they will suffer irreparable harm if this action is dismissed because "[t]he effect of dismissal would be that Plaintiffs would be denied any further review administratively and/or judicially." Filing 28 at 10. This formulation of irreparable harm is incorrect. The pertinent inquiry is not whether Plaintiffs would suffer irreparable harm if their federal case were dismissed; it is whether Plaintiffs would suffer irreparable harm if they were required to exhaust their administrative remedies. *See Anderson v. Sullivan*, 959 F.2d 690, 693 (8th Cir. 1992) (noting the plaintiff "presented no evidence that he would be irreparably injured by exhausting his administrative appeals"); *Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp.*, 440 F.3d 992, 1000 (8th Cir. 2006) ("A party may be excused from exhausting administrative remedies if . . . exhaustion would cause irreparable harm . . ."); *see also Ryan v. Bentsen*, 12 F.3d 245, 248 (D.C. Cir. 1993) (noting the plaintiff had "not shown that he would suffer irreparable harm if forced to exhaust his remedies and therefore he may not invoke the second exception to the exhaustion requirement").

Plaintiffs must show that requiring them to request vacatur of the ALJ's decision would have, itself, resulted in irreparable harm. They have not done so.   Plaintiffs   make   a   second irreparable harm argument based upon the Due Process Clause of the Fifth Amendment, contending that "[t]he denial of constitutional rights constitutes per se irreparable harm." Filing 28 at 9. The Court finds this argument is also unpersuasive.

Plaintiffs argue in their brief that they "have pled facts demonstrating the utter lack of process available to challenge re-opening decisions through an administrative appeal" but also

make clear they "are not challenging application of 42 C.F.R. § 405.974(b)(3), etc. based on the actual language of the regulations itself." Filing 28 at 9. Instead, Plaintiffs claim they are challenging "the validity of such regulations *as applied*, as [they] denied Plaintiffs' due process in considering Plaintiffs' re-opening request . . . ." Filing 28 at 9 (emphasis in original). That is, "under these facts," Plaintiffs contend they have been "denied due process of administrative review." Filing 28 at 9. There are several problems with this argument.

First, Plaintiffs' Complaint does not actually make out a specific Fifth Amendment claim alleging constitutionally deficient procedural due process. *See generally* Filing 1. Count I of the Complaint alleges a violation of the Administrative Protection Act. Filing 1 at 5. Count II of the Complaint invokes the Declaratory Judgment Act. Filing 1 at 6. Although their Complaint mentions the Due Process Clause of the Fifth Amendment once, it does so in reference to jurisdiction. *See* Filing 1 at 1 (claiming this Court has original jurisdiction pursuant to, *inter alia*, the Due Process Clause of the Fifth Amendment of the United States Constitution"). However, even if the Court were to accept *arguendo* that Plaintiffs had indeed pleaded a true Fifth Amendment claim alleging a due process deprivation, the Court does not find such a claim to be colorable based upon how they have articulated this claim in their brief. *See Anderson*, 959 F.2d at 693 (describing the type of collateral claim necessary to circumvent the administrative exhaustion requirement as "a colorable constitutional claim" and then concluding that the plaintiff had "shown no colorable constitutional claim").

Specifically, "while general principles of due process require an agency to follow its own regulations, not every regulatory breach is a constitutional violation." *FDRLST Media, LLC v. Nat'l Lab. Rels. Bd.*, 35 F.4th 108, 120 (3d Cir. 2022) (internal citation and quotation marks omitted). Indeed, the Supreme Court took care to caution that its "holding [in *City of New York*]

does not suggest that exhaustion is to be excused whenever a claimant alleges an irregularity in the agency proceedings." 476 U.S. at 485. The situation in that case was "materially distinguishable" from the normal case "in which a claimant sues in district court, alleging mere deviation from the applicable regulations in his particular administrative proceeding." 476 U.S. at 484. The Court then explained that in "normal" cases, "such individual errors are fully correctable upon subsequent administrative review since the claimant on appeal will alert the agency to the alleged deviation." *Id.* at 484–85; *see also St. Francis Hosp. v. Sebelius*, 874 F. Supp. 2d 127, 133 (E.D.N.Y. 2012) (permitting the plaintiff's claims to go forward without administrative exhaustion because the plaintiff was "challenging the 'validity of agency regulations,' rather than 'the application of regulations'"). Plaintiffs do not present an unusual set of circumstances like that presented in *City of New York*. Their situation falls within the "normal" class of cases because they are "arguing merely that an agency incorrectly applied its regulation." *City of New York*, 476 U.S. at 485. Plaintiffs do not contend that the pertinent agency regulations in this case violate the Fifth Amendment *per se*; they simply "challenge the validity of the regulations *as applied*" in this case. Filing 28 at 9 (emphasis in original). That is precisely the type of claim that the Court in *City of New York* sought to distinguish.

Furthermore, as the Eighth Circuit quite recently noted, when a court considers whether an individual received sufficient process, it "also considers the procedures he chose not to pursue." *Padda*, 37 F.4th at 1383. Here, Plaintiffs declined to seek a timely redetermination of the CRC's initial determination and instead decided to seek only a reopening. As Plaintiffs themselves acknowledged in their initial letter requesting a reopening, "Medicare's federal regulations allow a party to ask Medicare to reduce its initial determination in two different ways. The first is a direct right of appeal of initial determination, under 42 CFR 405.950. This is the usual request." Filing

22 at 198. As the Supreme Court recently reiterated in a related context, "a petition to reopen [is] a matter of agency grace that could be denied without a hearing altogether and that allowing judicial review would thwart Congress' own deadline for seeking such review." *Berryhill*, 139 S. Ct. at 1769 (recounting the Courts' prior reasoning in *Califano v. Sanders*, 430 U.S. 99, 108–109 (1977)); *cf. Your Home*, 525 U.S. at 454 ("The right of a provider to seek reopening . . . exists only by grace of the Secretary"); *Salinas v. United States R.R. Ret. Bd.*, 141 S. Ct. 691, 700 (2021) (reiterating that in *Your Home*, the Court previously explained that "[t]he right to seek reopening existed only be regulation and permitting review would undermine the ordinary deadlines for appealing the intermediary's reimbursement decisions").

Plaintiffs have consistently maintained that they "did not appeal the initial determination and, instead, requested a re-opening." Filing 28 at 4. Plaintiffs themselves say that "they filed the request to re-open to avoid the exact predicament they now find themselves in, as they were fully aware of the 120-day period for redetermination requests." Filing 28 at 6. Yet they still chose to forgo seeking a timely redetermination—the "usual request" for seeking to set aside an initial determination. *See* Filing 22 at 198. The fact that Plaintiffs chose to forgo requesting a timely redetermination of the initial determination significantly undermines any constitutional due process claim because an individual "cannot complain about lacking due process when the privation . . . was his own choice." *Padda*, 37 F.4th at 1383 (cleaned up) (quoting *Sahara Health Care, Inc., v. Azar*, 975 F.3d 523, 530 (5th Cir. 2020)).

### ii. The Remaining *Eldridge* Factors Also Are Not Met

Under current Eighth Circuit law, failure to satisfy one *Eldridge* factor is sufficient to defeat Plaintiffs' argument for waiver of the administrative exhaustion requirement. *See Degnan*, 765 F.3d at 809 (explaining that under Eighth Circuit precedent, when a party has failed to establish one of the three *Eldridge* factors, a court "need not consider the remaining two[.]"). Nevertheless,

because the Eighth Circuit's view is the minority one, this Court will consider—for the sake of completeness—whether Plaintiffs can satisfy either of the remaining *Eldridge* factors. Those factors are that "their claims are collateral to their claim of benefits" and "that exhaustion would otherwise be futile." *Schoolcraft*, 971 F.2d at 85.

Plaintiffs contend that their claims are "collateral," because they claim Defendants denied Plaintiffs the correct process and wholly failed to follow the applicable regulations. Filing 28 at 8–9. They argue their case is also collateral to their demand for reimbursement because they are challenging the validity of agency regulations and procedures themselves, pursuant to the due process clause of the Fifth Amendment. Filing 28 at 9. The Court is not persuaded. First, no claim "collateral" to the claim for benefits is pleaded. *Schoolcraft*, 971 F.2d at 85 (explaining that the claims must be collateral to the claim for benefits). As explained above, Plaintiffs' Complaint does not assert a Fifth Amendment due process claim. *See generally* Filing 1. Count I of the Complaint alleges a violation of the Administrative Protection Act, Filing 1 at 5, while Count II of the Complaint invokes the Declaratory Judgment Act, Filing 1 at 6. The only mention of due process in the Complaint is in reference to jurisdiction. *See* Filing 1 at 1 (claiming this Court has original jurisdiction pursuant to, *inter alia*, the Due Process Clause of the Fifth Amendment of the United States Constitution"). Moreover, to the extent Plaintiffs attempt to reformulate their claim as "due process," they have framed it as challenging "the validity of such regulations *as applied*, as [Defendants] denied Plaintiffs due process in considering Plaintiffs' re-opening request. . . ." Filing 28 at 9 (emphasis in original). This "as applied" due process challenge is consequently intertwined with the claim for benefits not "sufficiently collateral" or "independent" of it to support waiver of exhaustion. *See Schoolcraft*, 971 F.2d at 86.

Similarly, Plaintiffs' contention "that exhaustion would otherwise be futile," *Schoolcraft*, 971 F.2d at 85, is also unpersuasive. Plaintiffs had administrative procedures available to them, because Plaintiffs were required to request vacatur in order to fully exhaust their administrative remedies prior to invoking jurisdiction before this Court under the Medicare Act. Plaintiffs argue that it would be futile to require them to await the ALJ's determination of whether he or she would vacate the dismissal under 42 C.F.R. § 405.1052(e). Filing 28 at 7. This is so, they argue, because the ALJ, like all other prior contractors, was likely to adhere to the prior determinations that the decision on their claim was final and not subject to review. Filing 28 at 8. Yet, Plaintiffs cannot "establish, with certainty, that the final outcome of a request for vacatur would have been adverse [to Plaintiffs]," where whether to vacate the decision is in the ALJ's discretion. *Raymond v. Bd. of Regents of the Univ. of Minnesota*, 847 F.3d 585, 592 (8th Cir. 2017); 42 C.F.R. § 405.1052(e) (explaining that "[i]f good and sufficient cause is established, the ALJ or attorney adjudicator may vacate the dismissal"). Under these circumstances, Plaintiffs' futility argument fails. *Raymond*, 847 F.3d at 592.

## III.   CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss, Filing 20, pursuant to Federal Rule of Civil Procedure 12(b)(1) because the Court lacks subject matter jurisdiction over the matter. Plaintiffs' case is dismissed without prejudice.

Dated this 14th day of December, 2022.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge